

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN, TEXAS 78711

**JOHN L. HILL**
**ATTORNEY GENERAL**

January 31, 1975

The Honorable Senfronia Thompson
State of Texas House of Representatives
Committee on State Scholarship
  Programs
Austin, Texas 78767

Opinion No. H- 512

Re: Administration of scholar-
ship fund created by article
54.051m, Education Code.

Dear Representative Thompson:

You have asked seven questions concerning the administration of
the scholarship fund authorized under article 54.051(m), Education Code,
which provides that:

> (m) Twenty-five cents out of each hourly charge
> in Subsection (b) and $1.50 out of each hourly charge
> in Subsection (c) of this section shall be placed in a
> scholarship fund at each institution to be administered
> by that institution to award scholarships to needy
> students. Standards for determining need shall be
> formulated by each institution. No more than 10
> percent of said scholarship funds may be allocated
> to out-of-state students.

You ask:

> 1. May individual schools require a student to meet
> any standard other than demonstrating sufficient financial
> need in order to qualify for a scholarship under section
> 54.051(m)?

> 2. If the answer to question #1 is in the affirmative,
> may individual schools enact any academic or "character"
> guidelines to determine eligibility for such scholarships
> above and beyond requiring a student to be acceptable for
> admission, in the case of new students, or to maintain suf-
> ficient scholastic and disciplinary records to keep them in
> good standing and not classified in any generally applied
> probationary status?

3. If the answer to question #2 is in the affirmative, may schools enact guidelines that award such scholarships on a competitive basis in which a student with greater financial need is less likely to receive a scholarship than another student with lesser financial need, but who might rank higher in a competition on the basis of academic or other criteria?

4. In awarding scholarships under 54.051(m), may schools treat students differently on the basis of classification (i. e. freshman-sophomore or graduate- undergraduate) by reserving all or a percentage of funds for use by one class of students only?

5. If the answer to question #4 is affirmative, may the percentage of funds set aside for a class of students be determined without regard to whether that percentage is in proportion to the percentage of all students' financial need represented by that class of students?

6. If a school fails to reserve the proper amount of funds for scholarships from tuition revenue pursuant to 54.051(m) during a semester or fiscal year, must the school compensate for this by designating extra funds for scholarships from tuition revenues in subsequent semesters or years?

7. The University of Texas Board of Regents has adopted rules stating "There shall be established, in accordance with Article 2654c, Section 1(a)12, such a scholarship fund at each component institution where and when such a fund is deemed appropriate by the chief administrative officer". May the governing boards of state institutions of higher education grant the authority to administrative officials to determine not to set up the fund required by law?

While the language of section 54.051(m) clearly states that the scholarship fund created by that section is for "needy" students, the institutions are charged with formulating standards for determining need. See Attorney General Opinion M-1129 (1972).

We understand that the amount of available monies in the fund is limited and, in all likelihood, will never be suffient to award every student all the scholarship aid for which he or she may show financial need. Accordingly, it would seem reasonable that an institution may use additional standards or criteria other than comparative financial need in determining the distribution of the scholarship monies so long as the standards or criteria are reasonable and are designed to effectuate the intent of the statute to provide scholarships for needy students. We therefore answer your first question affirmatively.

Questions 2, 3, 4 and 5 concern examples of such additional criteria.

We note initially that a determination of whether each additional criterion is a reasonable one under the guidelines set out above, is dependent on the facts of the particular situation. For example, an additional standard may be reasonable on its face, but be unreasonable as administered. Thus, we can only advise you on whether in our opinion the general classes of criteria you mention could be reasonable.

In our opinion, the additional standards of academic standing and "character" could be reasonable standards a school may use in determining which needy students receive scholarships. We therefore answer your second question affirmatively.

Question 3 concerns the situation in which a student with lesser financial need is awarded a scholarship rather than a student with greater financial need because of the use of criteria other than need. In our opinion, such a method of awarding scholarships would be acceptable so long as all recipients of the scholarships did in fact require financial aid and the additional criteria were reasonable. Indeed, such a result would be inevitable given our opinion that criteria other than financial need may be used in the determination of scholarship awards. We therefore answer question three affirmatively.

Questions four and five concern the practice of a school of reserving all or a portion of the scholarship funds for use by one class of students, e.g., freshmen, sophomore, graduate, without regard to the percentage of all students' financial need represented by the class of students. This practice in effect imposes an additional criteria on the scholarship applicant, that he or she be within a specified class.

It is not within the purview of this office to suggest the best method of administering the scholarship funds. There may be valid reasons for a school to reserve a portion of its scholarship funds for each class; for example, a school may wish to reserve enough funds to provide continuing financial aid to deserving students as they progress from freshman to senior status. Thus, it is our opinion that nothing in article 54.051(m) precludes a school from administering scholarship funds as described in questions four and five. Of course, as we have stated, any such allocations of funds among the classes must be based on reasonable classifications and be designed to effectuate the intent of article 54.051(m).

Your sixth question concerns the failure of a school to reserve the proper amount of funds for scholarships from tuition revenue pursuant to article 54.051(m). We construe the "shall" language used by the Legislature in article 54.051(m) as mandatory; thus, the schools are required to set aside the amount called for. Yet, no penalties for failure to comply with the statute are provided. To our knowledge there is no authority in the general law which requires a school to compensate for the failure to reserve the proper amount of funds for scholarships by designating extra funds for scholarships from subsequent tuition revenues. In addition, the scholarship fund established by section 54.051(m) is appropriated to the various schools by Acts 1973, 63rd Leg., chapter 659, section 17, p. 2149, which provides:

> Sec. 17. INSTITUTIONAL FUNDS REAPPROPRIATED. All balances in the institutional funds of the several state institutions of higher education named in this Article, at the close of the fiscal year ending August 31, 1973, including balances in their revolving funds at that time, and the income to said funds during the fiscal years beginning September 1, 1973 and 1974, are hereby reappropriated for the operation, maintenance, and improvement of the respective state institutions.

This is a general appropriation rather than a line item; consequently the Legislature has provided no practical check on how the money is spent. Thus, although the schools are required by section 54.051(m) to set aside these specific amounts for scholarships, we find no law which provides a penalty or specific remedy for past failures to do so. Absent such law, we therefore must answer your sixth question negatively.

With reference to your seventh question, article 2654c, V.T.C.S., was repealed by the enactment of the Education Code (Acts 1971, 62nd Leg., ch. 1024, p. 3319) and is now substantively article 54.051, Education Code. Governing Boards of institutions of higher education may grant the authority to administer scholarship funds to administrative officials, but such officials may not ignore the mandate of article 54.051(m), which provides that a certain portion of tuition charges shall be placed in a scholarship fund for needy students.

## SUMMARY

An institution may use additional standards other than financial need in distributing the scholarship fund established by article 54.051(m), Education Code, so long as the standards are reasonable and designed to effectuate the intent of the statute to provide scholarships for needy students. The Legislature has not provided a mechanism to require schools to designate extra funds from subsequent tuition revenues when the school fails to reserve the proper amount of money for scholarships. Governing Boards of state institutions of higher education may not grant to administrative officials the authority to determine not to set up the scholarship fund established by article 54.051(m).

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee

lg